The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Please be seated. All right. Mr. Hallett, what a pleasure. Good to see you. Good morning, Your Honor. Good morning again. May it please the Court. My name is Jordan Hallett, and I have the privilege of representing Plaintiff Appellant Garnell Walls. Mr. Walls has owned a parcel of property in Brandywine, Maryland, for over 40 years. He sought to build a single-family home on that property, nothing more. But Prince George's County had rendered his property economically worthless by categorically refusing to grant him a waiver to install an interim well and septic system, despite the county's own 2018 water and sewer plan expressly providing for such waivers. This appeal presents two issues. Whether the District Court erred in dismissing Mr. Walls' Fifth Amendment takings claim for ripeness when the amended complaint plausibly alleged that DePuy made a final decision regarding his waiver application, or alternatively, as we discussed in the last one, that pursuing such an application would have been futile. Second, whether the District Court erred in suggesting it would abstain under the Buford exemption doctrine, even if Mr. Walls' claims were right, despite the fact that Mr. Walls sought monetary damages under 42 U.S.C. section 1983. I respectfully submit that both of the District Court's conclusions were error and should be reversed. The finality requirement, the ripeness argument. The Supreme Court has made clear that finality requirement for takings claims is, quote, relatively modest. That's from Packdale 594 U.S. 478. All a plaintiff must show is that, quote, there is no question about how the regulations at issue apply to a particular land in question. End quote. Here, the amended complaint plausibly alleges that DePuy reached precisely such a definitive position regarding Mr. Walls' property. Specifically, the amended complaint alleges that Mr. Walls submitted a completed waiver application to DePuy. That's at Joint Appendix 62, paragraph 40. And that's Joint Appendix 115, Mr. Walls' declaration at paragraph 7. The amended complaint alleges that DePuy, I say DePuy, I'm sorry, I should say Department of Permanent Inspections and Enforcement, expressly stated it would not approve the waiver. That's at Joint Appendix 62, paragraph 41, and Joint Appendix 115. Your complaint incorporated the DP letter that expressly stated that it would necessitate pursuing the legislative amendment process, and you didn't. I mean, how does that make it? It seems to go against the whole notion of being final, notwithstanding, I guess in most instances, just to casually say it. But this letter said if you want to pursue, you want to continue this, then here's the avenue. You do so. And you did not. Yes, Your Honor. And we addressed that in particular in our reply brief. Specifically, that's a legislative process. That is not an executive process, an agency process. That's an entirely separate, distinct process. Right, but these are done routinely, planned amendments. I mean, you're not talking about a rezoning. There's a big distinction between a rezoning and a plan amendment. And all he had to do was to go in and make a hardship showing and get a plan amendment. And why wasn't he required to do that? Again, it wasn't a legislative act of rezoning. It's simply a routine plan amendment, and they do those every month, don't they? No, Your Honor. Pretty frequently? So, before filing the- I mean, I don't know how often they do it, but as I understand it, those are routine. The district council sits in Prince George County for landing and zone use. Right. As alleged in the amended complaint, the director of the sewer and water division at DPI informed Mr. Walz initially. It has changed, as alleged in the amendment, but it informed him initially that DPI would not support the legislative amendment process. But it would have been so easy to resolve this problem. Why not just apply and then wait for a denial? And then, at that point, we have a case of controversy. If there's a denial and it's a very clean case of controversy. Or it may be that the court would grant the waiver, and then we have no controversy at all. And so, again, it would seem, and I think this is the drift of my fine colleague's question, that there were some relatively straightforward steps you could take that would either result in no controversy or a clean case of controversy. But right now, we're stuck in this never-never land about a case that seems not right. And you're seeking a waiver here, and normally waivers are a matter of grace. You would normally expect a developer to connect property to public sewer and water systems. That's the normal course. And what happens too often, and we've sat on a lot of these cases, and what happens too often is that developers are all too happy to get their permit and to throw up their development. And then once the revenue from the rent comes in, they don't want to pay for the public sewer connections and hookups and the water hookups. And they're dragging their feet and fighting about it and everything. And so what Prince George has said is that, you know, we want to have some assurance that these developments that are going up are going to have public sewer and water hookups. That's crucial. And the letter of February 28 said that the financial responsibility in the particular designated areas, five and two in your situation, the financial responsibility for the hookups belonged with the developers. And there's nothing wrong with that. No, Your Honor. I completely agree. I think that's how it should be. The problem here, there was no developer, right? There was no developer that would have been able to do that, as alleged in the amended complaint. There was a Saddle Creek community that was at the pre-planning phase called Saddle Creek. That's six to eight years down the road from even breaking ground. And so there was nothing in the interim. And this is why the waiver was available for Category 3, 4, and 5, which the appellant is in Category 5. And it's literally on DPI's own waiver that if you're in Category 5, you can qualify for this if you meet these eligibility criteria. And we allege in the amended complaint that he met all of that. In fact, he went through and worked with a different person, different divisions at DPI to get to the very end of the process. At the very end of the process where he's just submitting the application, he finds out that that's not going to be approved because Well, but you didn't submit it, did you? No. No, Your Honor, this is different. This one's different. We allege that he did submit it. He actually did submit it, and we allege in the complaint that he submitted the application. It's the appellee's argument that he did not submit it. Well, the district court accepted the proposition, your representation, that he submitted it for purposes of her decision, did she not? Your Honor, I don't think the district court went that far. It didn't? No, I think what the district court said was that there weren't sufficient allegations. So in the original complaint, the district court said that we didn't specifically allege that the application had been submitted. So we amended the complaint, and not only did we amend the complaint, but then we had a declaration from the appellant confirming that he submitted the waiver application. What the district court said was that the district court said that she did not find it sufficient based on the allegations alone and based on the declaration from the site and sewer water coordinator who said there was no application submitted, that there was no application. I thought she said she didn't have to resolve that, that the problem was the failure to pursue other remedies. No, that's the next part, your Honor, of her decision. I thought that was the ultimate basis for the decision. The ultimate, your Honor, from what I can recall, is that it was a ripeness issue again, that there was no finality made by DPI because a waiver application, according to the court, had not been submitted, and there was no decision made on the waiver application. So there was no finality, even if there was. What the district court said is that the district court said that the case would still be dismissed under the Bureau. Why should we be jumping into the middle of water and sewer hookups in every development in Prince George's County? You know, once again, I don't know whether this should be barefoot abstention or not, but at any rate, it would seem to me that we shouldn't just go racing into a question of whether to grant a waiver or not to grant a waiver on water and sewer hookups. And the presumption would be that if you want a development, the developer pays for water, or if you're going to put up one of these, the developer pays for water and sewer connections. Yes, your Honor. And if there is no developer here, we have an individual who is 78 years old who wanted to build on property that he purchased 40 years ago as his retirement home, and he's being told he can either pay for it himself, two point something million dollars to make the connections, or he can wait six to eight years for Saddle Creek Development to come in, at which point the developers would pay. Or he can pursue this amendment process. And I'll go back to that, your Honor. But before you do, even to think about it, tell me about this category, because you mentioned the Category 5. As I understood, the representative said they weren't going to recategorize it from 6 or 5 or whatever. You couldn't get it there, but is it not true that you could get it with Category 3 or 4? So you – I mean, in other words, you could get the permit for the septic tank and maybe an interim septic tank as well with 3 and 4? So to be clear, your Honor, on that, Mr. Walls would have to pursue two legislative amendments to get down to three, at which point – and they're not – unfortunately, if it was just a month, two months, or three months, that would have been something that he would have probably readily done here to try to resolve this. That's not what – that's not how the process works with the district. Tell us a little bit about that process. How do you go about a plan amendment request? There's a specific application. It's the legislative amendment process before the district council, and there's an application that you fill out. There's supporting materials, and at which point – at some point, the administrator will schedule it for, I think, a pre-hearing, then ultimately – So you're saying there's a separate decision of the zoning administrator? No, no, no, just for scheduling purposes, Your Honor. Just for scheduling it before the – for the district council. That process, at least back in 2023 – 2022 and 2023, and it might have been because of some fallout because of COVID – that process was taking more than a year to do, just one legislative amendment. But ordinarily, it doesn't take that long, does it? I'm not – you know what, Your Honor? I would – You don't know? I would – I don't know, but I would assume that maybe pre-COVID, maybe it wasn't that long, but I'm not 100% sure in Prince George's County. When did you get the letter suggesting you do that? What date was that? The – This year? February of 2022, Your Honor. So this is 2025, three years later? Yes. I mean, you'd rather go this route and wait three years than maybe a year to see what goes on there? I mean, if I understand it correctly, you still can do that – this, right? What's that, Your Honor? You still can seek this amendment process. You can, Your Honor. I'm assuming the client has not yet been able to resolve this. He has not, Your Honor, and if I may, I see my time's up. May I – But I'm just – but just to the point there is, I mean, if you really want to put something – you say it's 78, and I know it, you know, to be in that area to say, you know, you don't have forever, and you've got to understand that if you want to bring a case through the federal courts, by the time it gets to us, that's not tomorrow. It's going to be a year or so down the road, and you don't know – even after we hear it, you don't know when you're going to get an opinion. I mean, we work fast here, but you don't know. Even then, if it's to your benefit, there may be other issues that have to be dealt with, but you tell me there's a process he could have pursued. The county may not want to support him on 5 or 6, but it never said it wouldn't support you on 3 or 4. 3 or 4 would get you at least the interim. He could have a house on that property now. There's a greater possibility right now, but right now he doesn't have a house on that property because he's in court and has yet to ask for this amendment. Yes, Your Honor, and if the legislative amendment process was guaranteed, I think my client would have absolutely gone through. Nothing is guaranteed. This is not guaranteed. In fact, if anything is not guaranteed, is winning in the federal courts is not guaranteed. This is the method he chose. Having a choice of going to a legislative process with an amendment that, as Judge Kena has indicated, it is something we've done with some degree of regularity over the course of a year or whatever they do it, or bringing it here. As much as I like to believe the things that you can get, that we are for justice, and we are, but this is not the place to come when you want something immediately and under these circumstances when there is a viable alternative that you could pursue. And it wasn't. That's troubling in this case, and particularly because when you use the term legislative amendment, you first look at it and say, well, oh, you've got to go to state legislature for a bill. Oh, no, that's not what this is. This is a local type thing. I mean, it's more like a Board of Adjustment type deal here where you want to alter a zoning type thing or alter something that's within it, and maybe the word isn't routine, but it's done, and it wasn't pursued at all. Yes, Your Honor, and that is, you are absolutely right. The one thing that I will say is that still would not deprive Mr. Walls of coming to this court and invoking this court's authority to award him damages. The question that's being asked is why we should jump into the middle of zoning and land use law when there are a variety of other state remedies that might be more expeditiously pursued. I mean, historically, zoning and land use law, they're not on the periphery of state law questions. They're right at the core of it. They're right at the heart of it, and why should we be jumping into that unless the state process is malfunctioning? But, you know, each of my colleagues has suggested other avenues that might be pursued that would result in either a clearer controversy or you get what you look for. But this seems to me to be a rather unsuitable and premature invitation for us to just try to rework the minutia of Prince George's land use law. At any rate, you've got some additional time for rebuttal if my colleagues have any further questions they can ask. Thank you. Thank you, Your Honors. Mr. Murray. Good morning, and may it please the Court. My name is Andrew Murray. I represent Prince George's County, Maryland, and its former director of the Department of Permitting, Inspections, and Enforcement, Ms. Melinda Bowling. We're here today, Your Honor, because the plaintiff in this case, Garnell Walls, prematurely filed a takings action in the United States District Court for the District of Maryland, alleging a regulatory takings prior to having ever received a final determination from the permitting agency on an application for an interim septic system waiver. I'm trying to visualize it. Maybe this is outside the record, but at least it helps to understand what we're – contextually what we're dealing with. This is a parcel of property. Is it like two and a half acres or so? I believe it's on the upwards of three acres, but yes, Your Honor. And there are other houses around it, or is it out there by itself? Well, it's a great question, Your Honor. It's in an area of the county that was formerly rural, and as my counsel alluded to, Mr. Walls has owned this property since the late 1970s. And as I'm sure everybody knows, since that time, suburban sprawl in Prince George's County, which borders the District of Columbia, has crept southward. And there are now subdivisions in this south area of the county. So this is a growing area. It's a very quickly growing area. It's an area that the county has re-designated from sewer Category 6, which is rural and septic systems and water provided by wells, to Category 5, where they are expecting future development in the area. So one of these days there's going to be a sewer line running past this property. Absolutely, Your Honor. It just hasn't happened yet. That's right. That's exactly right, Your Honor. All right. I think I have an idea. That's exactly right. Here's the other thing. I grew up on a farm, so I kind of asked you this question with you and stuff.  I take it this land perked, which means he could put a sewer, but you won't let him put a private sewer line on it because you require it to be connected to a line. Is that right or what? How does it go? Well, I don't know that the health department came to a final conclusion on whether or not he could put in – I mean, that's what most people do. You just go out there and put your well in the ground. His property perked. And you perked the property, and you got sewer and water out there, and you just independently do it. That's what we did on our farm. That's what I have. When the city comes in, then they want you to get a line. So he could – all I asked was he could do this, but you won't let him do that because the requirement is that he connects into the city line. But your city line would cost $2 million to get to it. Correct, unless – and this is why we're here. We're talking about this waiver provision, and that's why it's called an interim. Who can give a waiver? Both the – depending on the circumstances, the director of the Department of Permitting, Inspections and Enforcement, or depending upon the path applied for, ultimately the county council via a plan amendment. And so there are these two avenues. Mr. Walls chose the one avenue that – Well, last question on that. Yes, sir. Do you – again, it's just a curiosity. Do you just give these things as a matter of course sometimes to people? I mean, you're dealing with rural people. You've got this acreage out there. You know it's going to take $2 million. I mean, it seems like to me it's pretty simple to say, oh, go ahead and put yourself in the tank out, or maybe conditionally until we get a water line in, then you would be required to get in. I mean, are there instances you do that? Absolutely, Judge, and I think that's what – Why didn't you do it here? Well, the letter that is the centerpiece of this action, the February 28, 2022 letter, explains that. And first and foremost, to receive that interim waiver, he was required to submit to the Department of Permitting and Inspections a record plat of his property. I heard for the first time today that the allegation that the denial of this permit was the last thing that he needed to do to develop his property. The record completely belies that. The letter from the director says we don't know where you are in the development process. You're saying that if he submits you a record of the plat, then that might move this forward? Absolutely, Judge. Can he do it today? Yes. Maybe when he goes home, he might want to submit a record of the plat to you. He still has the opportunity to pursue the course. I'm with Judge Wilkinson on this in terms of why we're here on this. It seems like this is more of building permit for plat. So it really sounds like a state problem. I get the allegation of the taking. It is a constitutional provision, but this is not the avenue many of these cases would go. And my concern would be what would be the limiting case in a case like this. So I kind of got that. But there seems to me, you know, I practiced law now over 35 years ago, believe it or not, as a judge, but a judge that long. But in the old days, lawyers would get together and you kind of work these things out for your client and say, well, it doesn't make any sense to do this. It's costing all the money to do all this. It hadn't been $2 million you're paying, but you're paying a lot of money. Why don't you just do this? And, you know, I can build a nice house up there and spend as golden years on there. It sounds like a beautiful piece of property to me. And we would love for that to happen for Mr. Walsh. Is he the only one having this problem? Pardon? Is he the only one in that area having this problem? No, there are others, but they have opted to go through the legislative amendment process and have, in fact, obtained upgrades to their sewer category to make them immediately eligible for these interim septic system waivers. So there are a number of successful people, and there are others that predate the 2018 water and sewer plan that are currently on well and septic. And they continue. My concerns were a little bit outside, but I just you've helped me a lot to understand at least the context of what we're working with here. And, you know, at the end of the day, we want, you know, we're not here to create controversy. It would be nice to get this matter handled here without us having to get involved in it. But I defer to my colleague. What I was going to say is Judge Wynn's comments resonate with me. I think he makes some excellent points. But this, I was reading, I've read it several times, the February 28th letter of 2022. It goes into considerable detail as to what you need to do and why. It's not as if they were stonewalling the situation. They said, here's what you've got to do. And in one sense, the letter's a little bit opaque, but in the other sense, it's actually very helpful. And at any rate, it doesn't seem to me that the state is out to foreclose state court remedies. In fact, the state has been sort of forthcoming and generous in saying, you know, here's the way to go. Here's what you want to do. Agreed, Your Honor. And it makes this somewhat of a frustrating process at this point. But, you know, suffice it to say, for a Fifth Amendment takings claim, not only must there be finality of a decision, but the contours of that claim have to be defined such that. You know, I mean, I just cannot believe that you can construct a Fifth Amendment takings claim out of a decision to deny a waiver on a matter of public sewer and water hookups. And the way in which that is done, it not only implicates the state's interest in matters of land use and property, but it also has public health concerns seem to me to be implicated, too. These are matters that impact directly public health as to how the water and sewer connections are made. You have to establish some uniform rules. We can't just say, oh, we'll grant this waiver here and we won't grant it there and everything. And this is right at the core in terms of health and in terms of land use. It's right at the core of state authority. And it is not only right, but when it gets to be right, there are still problems about Burford abstention. But they don't have to be resolved right now. The only thing that's before us is whether this case is right, given the number of state remedies that were available but not pursued. Correct, Your Honor. And just parenthetically, I would note, and I'm sure my colleague will confirm when his time for rebuttal is, he actually did, following the dismissal of his complaint, Mr. Walz did file a parallel action in state court, which is presently before the appellate court of Maryland. But he has not followed these, he filed another lawsuit, I guess is what I'm trying to say, in state court. He has not followed the procedures outlined by the director in her letter of February. Well, where is the state court lawsuit now? The circuit court for Prince George County dismissed it, primarily for the same reasons that the district court dismissed it, and it's now before the appellate court of Maryland, pending appeal. So how that impacts a Burford analysis at this point, I don't know if it renders it moot or not. We just have a simple matter, really, of whether this is right, and then affirming the dismissal for warrant of rightness will give the, I think will give the Maryland courts the chance to make their own ruling with respect to this whole issue, and how they make that ruling would seem to be very informative and helpful to us. Affirming the dismissal on grounds of rightness has, it seems to me, has the advantage of allowing the Maryland courts to pursue their, without any formal abstention ruling, it allows the Maryland courts the time and leeway to make their decision, which is bound to be helpful to us. And the district court can, if an amended complaint is filed, because the dismissal, I guess, was without prejudice, the district court can actually stay its decision, pending the Maryland, what the Maryland courts do. And so that's the way it seems to me cooperative federalism is supposed to work. And short of abstention or certification, we have formal doctrines, which get it over to state court, abstention and certification being the two most prominent, but federalism can work in all kinds of ways, and respect for state courts can work in all kinds of ways. And one of those ways is saying that it's not right here, and goes back, and then the state courts are signaling the state courts, you know, this is an area in which you have preeminent concerns, and we want to hear what you have to say, and it's going to be very helpful. Which is what I think the district court essentially said in its opinion, Your Honor. Because this is a health issue, it's not just a land use issue, although it's significantly a land use issue in trying to say, well, this is a regular, the refusal to grant a waiver on something like a water connection is a regulatory taking. That's a real stretch, a real stretch. And then when you get past that, and you get into the health implications of it, and the need from a health perspective of having uniform standards with respect to these sorts of utility hookups. Which is what the county is trying to do, Your Honor. They're trying to have a uniform system, and why wouldn't they at a time of rapid, as you pointed, Maryland and the Maryland courts and the Maryland legislature and everyone else, would want to have a uniform system without us jumping in and saying, oh, give this guy a waiver. And that just creates all kinds of kerfuffle and everything within the Maryland system. It makes us look bad, too, justifiably. And as the court correctly notes, this uniform system, this 2018 water and sewer plan adopted by the county and the county council has to be approved by the Maryland Department of the Environment. So it is a statewide policy, albeit there are nuances to the different counties, depending upon their particular development phases. I think the district court painstakingly analyzed the cases on what constitutes a final judgment and whether or not Mr. Walls plausibly pled futility in this case. It concluded he did not. We, of course, concur in that assessment. And I would close, Your Honors, by saying that you can't have a Fifth Amendment taking if Mr. Walls' development would have been barred by other obstacles. In other words, what I said in my initial comments were I'm hearing for the first time the allegation, the claim that the denial of an interim well and septic was the last phase of his development proposal, the last thing he needed in order to successfully build his home, because the letter of February 28, 2022 completely refutes that. The health department letter indicating a successful perk that he relies upon, extract page 73, while it confirms that he had a successful perk, it goes on to list any number of A through K reasons why there are additional things that must be satisfied before he would get health department approval for a septic system. On page 5 of his brief, he claims that he submitted a waiver to the health department, which is the wrong agency. The form for the waiver is DPI, and he claims that he paid a fee of $472.50 when at JA-52, the fee schedule per the 2018 water and sewer plan for an interim septic system waiver is $550. Is the opinion of the district court or the reasoning of the district court adequate, do you think, or is that something that we have anything to add? The point I'm making, Your Honor, is that the district court bent over backwards to find that he actually applied for this permit. I find that a dubious proposition at best, but it fell back on no final decision, and you failed to meet futility. All we can do is make a mess of things. That's all we can do is just make a total mess of it. Unless there are any further questions, Your Honors, I'll cede, I think, my remaining two minutes. Thank you. Okay, we're fine. Your Honors, I would like to start with the Fifth Amendment takings portion with respect to state remedies. The United States Supreme Court made clear in Nick that state remedies are irrelevant for purposes of a Fifth Amendment takings claim. I will note that in the context of land use, it is ideal for state courts to decide specific things with respect to land use. The interesting thing about this case is we had the district court judge who said there was no finality because a waiver had not been submitted. We followed the district court's decision about refiling it in the circuit court. The circuit court judge initially disagreed with the district court and found that there was finality, that there was an application submitted, but determined that the statute of limitations was not right. The district court later entered an opinion after we did a motion for reconsideration because we argued that the statute was told while the case was pending in federal court, and the district court then ruled that the case was not right but did not explain the decisions for that. But it put the client in a catch-22. We have one court who is saying, and again, this is at the pleading stage. The record has not been developed. This is the pleading stage just based on the allegations and the complaint. Our client has said at paragraph 40 in the complaint that he submitted the application. He went through this process back in 2018. In 2022, he received the letter. The regulatory takings occur at the point in time, the entire point in this case is that DPI's own interim waiver application states that he is eligible for the waiver, and all they had to do, our argument in the entire case is that DPI got the decision wrong about whether it had the authority under law to grant the waiver. Its own application says it does, and at the time that the initial complaint was filed, there were no other ones who went through the legislative amendment process that we were aware of at all. By the time we filed the amended complaint, there were three people who were going through the legislative amendment process, and this is the first time I'm learning that they were actually successful. The entire point is that the Fifth Amendment taking occurred at the point in time that DPI's director arbitrarily and erroneously decided that she did not or the agency did not have the ability to grant an interim well and septic system based on their own regulations and their own 2018 water and sewer plant and their own waiver application. That's what the entire case is about. Our client was prohibited from using his land whatsoever because DPI had decided that it did not have the authority to grant the waiver when its own application says so and the state statute says so. Right. But Ms. Bolling's letter also specifically stated that, excuse me, after saying he did not meet the criteria for a waiver from DPI, that if he wanted to pursue the option of an interim well and sewer system, that he would have to pursue the legislative plan amendment process. So she wasn't, the government was not closing the door on him, and don't you really have to have that in order to pursue your takings claim? Why not? No, Your Honor. It's whether or not the agency, so the agency is different from the legislative body, right, the county council and city council. It's whether or not the agency has dug in its heel and made a decision about whether someone can receive a permit or other benefit, and in this case the amended complaint makes sufficient allegations that the agency, including the letter from Ms. Bolling, makes clear the agency dug in its heels and determined that our client was not eligible under the agency's process to receive a waiver and that any other state administrative remedies are irrelevant for purposes of the Fifth Amendment takings claim. Why don't we just, we can just wait for the Maryland Court of Appeals to resolve this. And Your Honor, I am completely fine with that. Our concern is that we would have preferred that the district court stayed the action like we proposed should have happened to allow the state court so that the statute of limitations doesn't then put our client out of being able to No, that's before the district court. Yes, Your Honor, I would say that if this court remanded the case with clear instructions that there would be an entry of stay pending the outcome of the state court decision You can make that motion before the district court. Well, Your Honor, if you affirmed it, then we lose the time. The time is not told. It's a dismissal without prejudice. Right, Your Honor. But it was in litigation for more than two years. That's the problem. We lost. So if that happens, then our client is in, again, a catch-22. He can't then go back for his Fifth Amendment taking claim because the statute would have expired. If you make a tolling argument. We could make an equitable tolling argument. We could. You could also file for a plan amendment, couldn't you? We could file for a legislative amendment. That just seems to be the most obvious way to go. Well, after today, this might be something that I can use to convince my client to do that while things play out. I would just ask that Your Honors, if Your Honors would consider remanding the case for entry of a stay to preserve my client's rights so he does not lose the rights if the state court decides that in our favor, that the director of DPI actually did exceed her authority or get the case wrong, which at which point he would have been able to get the interim. I think that's a tolling question that isn't before us. I just don't want to remand with a whole lot of instructions and everything because I'm not sure what the state of play is going to be. Understood, Your Honor. All right. Thank you, sir. Thank you. We'll come down and read counsel and move into our final case.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Barbara Milano Keenan